## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.

DEENA D'CLUTE,

     Plaintiff,

v.

FLORIDA POWER & LIGHT COMPANY,

     Defendant.

_____/

### PLAINTIFF'S COMPLAINT FOR DAMAGES AND
### DEMAND FOR JURY TRIAL

COMES NOW, DEENA D'CLUTE ("Plaintiff"), by and through her undersigned counsel, sues Defendant, FLORIDA POWER & LIGHT COMPANY, a Florida Profit Corporation ("FPL" or "Defendant") and alleges as follows:

### JURISDICTION AND VENUE

1.     Ms. D'Clute brings this action to recover monetary damages, compensatory and punitive damages, and all other relief as deemed by this Court against Defendant FPL for gender discrimination, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"); the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq.* ("FCRA")

2.     The jurisdiction of this Court is invoked pursuant to the provisions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Florida Civil Rights Act, §§ 760.01-760.11.

3.      Jurisdiction is conferred upon this Court pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

4.      The claims asserted in this Complaint arose in the Southern District of Florida during the course of Plaintiff's employment with Defendant.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant employed Plaintiff in Palm Beach County, Florida.

## PARTIES

6.      Ms. D'Clute, at all times pertinent to this Complaint, resided within the Southern District of Florida and is over the age of eighteen.

7.      Ms. D'Clute is a Christian female employee of FPL and is a member of a class protected under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act because of her gender and religion.

8.      Defendant is a Florida Profit Corporation organized and existing in Florida with its principal place of business in Palm Beach County, Florida, and authorized to do business in Florida.

9.      Ms. D'Clute worked at the Defendant's location in Juno Beach, Florida, and all facts that give rise to this Complaint occurred in Palm Beach County, Florida.

10.     Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. § 2000e(b); Fla. Stat. § 760.02(7)).

11.     Ms. D'Clute has exhausted her administrative remedies by filing a timely Charge of Discrimination against the Defendant with the Equal Employment Opportunity Commission and Florida Commission of Human Rights("Charge").

12.     Ms. D'Clute's Charge was filed on or about January 14, 2021. The actions complained of herein occurred no more than 300 days before that date and/or continued from that date stemming from the same actions set forth in the Charge.

13.     Plaintiff was issued a Notice of Right to Sue on February 1, 2024 ("Notice"). This lawsuit is filed in accordance with that Notice and within the applicable 90-day time limitation. *See* Ex. A, Copy of Notice.

14.     All other conditions precedent to this action have been performed or have been waived.

## **OVERVIEW**

15.     Ms. D'Clute has been employed by FPL as a radiation technician since approximately 2011.

16.     Ms. D'Clute was severely, pervasively, and repeatedly bullied, harassed, and discriminated against by her male supervisor at FPL and other co-workers.

17.     After Ms. D'Clute complained about her mistreatment to her indifferent employer, FPL,  instead of being protected from the intensifying bullying, FPL punished and retaliated against Ms. D'Clute for exercising her legal rights, by writing up Ms. D'Clute for baseless accusations and allegations, forcing Ms. D'Clute to use her personal time off and vacation days, placing her under a different set of rules than other male employees, attempting to get Ms. D'Clute fired for baseless allegations, and allowing or enabling the co-workers bullying and harassing Ms. D'Clute to continue their antics without any consequences.

18.     FPL allowed those mentioned above discriminatory and harassing actions against Ms. D'Clute to continue for years without taking any action.

19.     As a direct result, Ms. D'Clute has suffered damages, emotional devastation, humiliation, pain and suffering sufficient to justify the imposition of punitive damages against FPL.

## GENERAL ALLEGATIONS

20.     Ms. D'Clute has been a loyal and dedicated employee of FPL since approximately 2011 as a Radiation Technician.

21.     Even though she has undergone discriminatory and harassing treatment, since her commencement at FPL, Ms. D'Clute has conducted herself as a model employee dedicated to her job and meeting all company performance expectations.

22.      Months after starting with FPL, Tammy Green ("Green") began to harass and bully Ms. D'Clute.

23.     Other FPL employees witnessed Green rummaging through Ms. D'Clute's desk and purposely leaving items out of place and disorganized.

24.     Ms. D'Clute reported Green's behavior to supervisors at FPL, who did not take any action to mitigate or reprimand the acts.

25.     The lack of action from FPL's supervisors emboldened Green, who continued to escalate her bullying and harassing attacks on Ms. D'Clute.

26.     Green then recruited two other co-workers by the name of Harry Gottfried ("Gottfried") and Fred Kick ("Kick") to join in on the discriminatory treatment, bullying, and harassment of Ms. D'Clute.

27.     Green, Kick, and Gottfried openly began attacking Ms. D'Clute, an openly practicing and devout Christian, and her Christian faith.

28.     In an attempt to ridicule Ms. D'Clute, Green, Kick, and Gottfried would openly yell and call Ms. D'Clute the "Church Lady."

29.     Green, Kick, and Gottfried would place religious symbols on Ms. D'Clute's desk or in front of her in an attempt to ridicule Ms. D'Clute's faith and religion.

30.     Green, Kick, and Gottfried would insult and make fun of Ms. D'Clute because Ms. D'Clute recognizes Jewish holidays.

31.     FPL Supervisors saw, heard, knew, or should have reasonably known about all the antics Green, Kick, and Gottfried were up to against Ms. D'Clute, yet they took no action.

32.     Ms. D'Clute would report these actions to her supervisors at FPL, but no action was taken.

33.     Instead, FPL supervisors told Ms. D'Clute to get along with her co-workers.

34.     Her supervisors insinuated that Ms. D'Clute was the problem because of what she wore and because she openly practiced Christianity.

35.     After Ms. D'Clute made numerous complaints to FPL management—primarily to supervisor Dennis Hampton ("Hampton")—her supervisors and the Human Resources department at FPL ("HR") began to make false allegations against Ms. D'Clute.

36.     Starting around the early months of 2014, Ms. D'Clute was asked to go to multiple meetings with HR, where she was asked to explain why she had alleged sexual encounters with other FPL employees and co-workers.

37.     The alleged sexual encounters were fabricated lies by Green, Kick, and Gottfried, and Ms. D'Clute would report it to supervisors at FPL.

38.     However, FPL supervisors, instead of addressing the harassing conduct, would ask Ms. D'Clute to wear different types of clothing or not act in certain ways with co-workers.

39.     Starting around 2016—since FPL management continued to enable and allow Green, Kick, and Gottfried and Green to bully and harass Ms. D'Clute—Green, Kick, and Gottfried began to sabotage Ms. D'Clute at work by moving radiological warning signs around the plant.

40.     Green, Kick, and Gottfried would move the radiological postings before Ms. D'Clute commenced her shift.

41.     Ms. D'Clute noticed the postings were misplaced or were moved, but it took her almost a year to figure out that Green, Kick, and Gottfried were attempting to sabotage her work.

42.     Upon discovering the sabotage attempt, Ms. D'Clute went to FPL Supervisor J.R. Fowler ("Fowler") to report Green, Kick, and Gottfried's dangerous actions.

43.     Instead of being concerned about the dangerous acts, Supervisor Fowler laughed and responded to Ms. D'Clute, "It has been over a year, and you have just noticed it?"

44.     Fowler knew about Green, Kick, and Gottfried's actions and did not take any action to remedy the situation, thus enabling and allowing the bullying and harassment of Ms. D'Clute to continue.

45.     On or about October 24, 2020, Green and Gotffried sent Ms. D'Clute a card harassing Ms. D'Clute on her anniversary of getting her breast augmentation surgery.

46.     The card was meant to harass, bully, shame, and threaten Ms. D'Clute by sending the message that Green, Kick, and Gottfried knew where she lived.

47.     Ms. D'Clute was worried for herself, her family, and her children and, as such, reported the actions to FPL supervisors.

48.     FPL supervisors took no action and allowed Green, Kick, and Gottfried to continue their despicable behavior and acts toward Ms. D'Clute.

49.     On or about March 29, 2021, Green, Kick, and Gottfried sent a harassing and threatening letter to Ms. D'Clute's home accusing Ms. D'Clute of getting Gottfried terminated, shaming Ms. D'Clute's body, and accusing her of having sexual relationships with employees at FPL.

50.     Ms. D'Clute reported this letter to FPL supervisors, but FPL did not take action to resolve the situation or behavior—once again allowing the hostile work environment to continue.

51.     Green, Kick, and/or Gottfried continued to stalk, bully, harass, and threaten Ms. D'Clute at FPL throughout the time they were employed there without any consequences from FPL.

52.     FPL's inactions allowed Ms. D'Clute to continue to be subjected to sexual harassment and bullying by her supervisors and co-workers Green, Kick, and Gottfried.

53.     Ms. D'Clute was subjected to sexual comments about her breasts and body with the knowledge of FPL supervisors and, at times, by the supervisors themselves.

54.     As one example, one time, Ms. D'Clute went to report the unlawful behavior to a supervisor, that same supervisor told her not to wear a particular pink shirt she owned because her breasts showed too much, and that bothered Green.

55.     In another instance, in response to Ms. D'Clute's complaints about unlawful behavior, an FPL supervisor would repeatedly invite Ms. D'Clute to his office. The FPL supervisor, in a manner sexually and romantically advancing himself upon Ms. D'Clute, would insinuate that Ms. D'Clute come alone to his office.

56.     Ms. D'Clute told the supervisor multiple times that she did not feel comfortable going alone to his office since it was customary for a union representative to be present at any meeting with a supervisor.

57.     Ms. D'Clute reported these advancements to HR and other supervisors at FPL, but no action was taken.

58.     Instead, Ms. D'Clute began to experience progressive discipline from FPL.

59.     Ms. D'Clute then began to fend off numerous false reports and allegations by the HR department at FPL.

60.     In an attempt to silence Ms. D'Clute, FPL supervisors made numerous attempts to reprimand and/or terminate Ms. D'Clute from her employment at FPL.

61.     Additionally, Ms. D'Clute was told by FPL supervisors and forced to use her paid time off, sick days, or vacation days so she would not have to experience hostile acts against her at FPL.

62.     Ms. D'Clute was also forced to work different schedules to avoid working the same shifts with the FPL employees and supervisors who discriminated, bullied, harassed, and created a hostile work environment for Ms. D'Clute.

63.     Other FPL supervisors noticed the attacks and discriminatory treatment against Ms. D'Clute and expressed their apologies that Ms. D'Clute was undergoing such an experience.

64.     FPL supervisors were aware or should have reasonably been aware of the hostile work environment created and enabled by FPL.

65.     As a result of FPL's lack of action and allowing the discriminatory, sexually harassing, and hostile work environment, Ms. D'Clute had no choice but to obtain counsel and file her Charge and the current lawsuit.

66.     The timing and the callous manner in which Ms. D'Clute was treated leads to the inescapable conclusion that FPL chose to penalize Ms. D'Clute for reporting to FPL supervisors the ongoing abusive and discriminatory treatment (amounting to discrimination, harassment, and

a hostile work environment) she had continued to experience at the hands of Green, Kick, Gottfried, and FPL supervisors, and her objections against such acts.

67.     FPL's conduct occurred because of Ms. D'Clute's legally protected characteristics, her sex/gender, and her Christian religion, and the conduct was pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

68.     Defendant FPL, by and through the conduct of its agents, discriminated against Ms. D'Clute based on her sex/gender and religion, including by permitting Ms. D'Clute to endure escalating discrimination despite her complaints; by having Ms. D'Clute endure progressive discipline and not having other male employees endure the same.

69.     The harassing and mistreatment of Ms. D'Clute by Green, Kick, Gottfried, and FPL supervisors that made hers a hostile work environment included, but was not limited to, ignoring Ms. D'Clute's request for support while providing such support for her male colleagues, screaming at her, being belligerent towards her, being hostile and aggressive towards Ms. D'Clute, bullying and belittling her, criticizing Ms. D'Clute for no reason, accusing Ms. D'Clute of wrongdoings when there were none, making many demeaning and derogatory remarks to or about Ms. D'Clute, often in mixed company, and punishing her for having complained about the abusive bullying and hostile work environment and after Ms. D'Clute complained and expressed her concerns that she would not be made to undergo progressive discipline, change the way she dressed, change the way she interacted with co-workers, change her work schedule when other male co-workers were not so required (or required to do so to the same extent) after her complaints of sex and religious discrimination.

70.     At all times material, FPL's agents, Green, Kick, Gottfried, or her supervisors, acted within the course and scope of their employment so as to bind FPL by their actions and failure to act as it is related to Ms. D'Clute.

71.     Ms. D'Clute has hired the undersigned counsel and promised to pay her counsel a reasonable fee for his services.

## COUNT I- SEX/GENDER DISCRIMINATION (DISPARATE TREATMENT) IN VIOLATION OF TITLE VII

72.     Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

73.     FPL is prohibited under Title VII from discriminating against Ms. D'Clute because of her gender/sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

74.     FPL engaged in unlawful employment practices prohibited by Title VII when FPL discriminated against Ms. D'Clute because of her sex/gender.

75.     Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, discriminated against Ms. D'Clute because of her sex/gender by subjecting her to progressive discipline, attempting to terminate her employment, requiring she dressed differently, requiring Ms. D'Clute to act differently with co-workers, forcing Ms. D'Clute to take her personal time off and vacation days, or requiring Ms. D'Clute change her work schedule all while not requiring the same from other male employees.

76.     Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, treated Ms. D'Clute differently than other similarly-situated employees because of her sex/gender, including, but not limited to, the following male comparators:

a.  Clint Ellingsworth,

b.  Cam Gibson,

c.  Bill Blakely,

d.  Mike Napier,

e.  Nate Dinger,

f.  Larry Love,

g.  John New,

h.  JR Fowler,

i.  Brian Sexton,

j.  Zacharia DiDonato,

k.  Ryan Winsky,

l.  Matt Littlejohn,

m.  Kevin Nowack, and

n.  Steve Payne

("Male Comparators")  none of which were subjected to progressive discipline, termination of employment, requirements to dress differently, requirements to act differently with co-workers, forced to take personal time off or vacation days, or required to change work schedules in response to reporting unlawful behavior.

77.    None of the Male Comparators were harassed and made victims of a hostile work environment, none of whom were screamed at, responded to with hostility, and incorrectly accused of wrongdoing.

78.    Defendant FPL's disparate treatment was because of Ms. D' Clute's sex/gender.

79.     Defendant FPL treated Ms. D'Clute less favorably than similarly situated employees outside her protected class.

80.     In subjecting Ms. D'Clute to adverse employment action on the basis of her sex/gender, Defendant FPL intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

81.     Defendant FPL violated Title VII by unlawfully discriminating against Ms. D'Clute based on her sex/gender, of which Defendant FPL was fully aware.

82.     As a result of Defendant FPL's violation of Title VII, Ms. D'Clute has suffered damages, including, but not limited to, lost wages, mental pain and suffering, humiliation, emotional distress, diminishment of career opportunities, harm to business reputation, loss of self-esteem, disruption to her family life, and other harm, pain and suffering, both tangible and intangible.

83.     Defendant FPL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. D'Clute's rights under Title VII. Accordingly, Ms. D'Clute requests punitive damages as authorized by Title VII.

84.     The conduct of Defendant FPL and/or its agents deprived Ms. D'Clute of her statutory rights guaranteed under Title VII.

85.     Ms. D'Clute further requests that her attorney's fees and costs be awarded as permitted by law.

86.     Ms. D'Clute has been damaged by FPL's illegal conduct.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant FPL has violated Title VII and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper.

## COUNT II- SEX/GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF TITLE VII

87.  Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

88.  Here, FPL's conduct occurred because of Ms. D'Clute's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

89.  Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, discriminated against Ms. D'Clute because of her sex/gender by subjecting her to progressive discipline, attempting to terminate her employment, requiring she dressed differently, requiring Ms. D'Clute to act differently with co-workers, forcing

Ms. D'Clute to take her personal time off and vacation days, or requiring Ms. D'Clute change her work schedule all while not requiring the same from other male employees.

90.     The harassing and mistreatment of Ms. D'Clute by Green, Kick, Gottfried, and FPL supervisors that made hers a hostile work environment included, but was not limited to, ignoring Ms. D'Clute's request for support while providing such support for her male colleagues, screaming at her, being belligerent towards her, being hostile and aggressive towards Ms. D'Clute, bullying and belittling her, criticizing Ms. D'Clute for no reason, accusing Ms. D'Clute of wrongdoings when there were none, making many demeaning and derogatory remarks to or about Ms. D'Clute, often in mixed company, including, but not limited to, the following:

    a.  "You smell bad."

    b.  "Stop showering with vinegar"

    c.  "You're nothing but a crying, sniveling snowflake. No one in the department likes you."

    d.  "You are a crazy nut."

    e.  "The only reason you still have a job is because of your relations with the supervisors."

    f.  "We are so glad Clint got you to get a boob job! Now, if he can only get you to shower using real soap! You stink!!"

    g.  "[Ms. D'Clute] makes this annoying sound with her lips when she laughs. She sprayed me and another co-worker with spit."

91.     The harassing and mistreatment of Ms. D'Clute continued when FPL punished Ms. D' Clute for having complained about the abusive bullying and hostile work environment and after Ms. D'Clute complained and expressed her concerns, FPL made Ms. D'Clute undergo progressive

discipline, change the way she dressed, change the way she interacted with co-workers, change her work schedule when other male co-workers were not so required (or required to do so to the same extent) after she complained of sex and religious discrimination.

92.     The harassing actions of FPL against Ms. D'Clute, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

93.     In subjecting Ms. D'Clute to adverse employment action on the basis of her sex/gender, Defendant FPL intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

94.     The harassing conduct was directly connected to Ms. D'Clute's sex/gender.

95.     FPL's leadership and supervisors, namely Dennis Hampton and JR Fowler, made numerous comments and conduct related to Ms. D'Clute's sex/gender.

96.     When Ms. D'Clute voiced her objections to this harassing and discriminatory treatment, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments and conduct.

97.     Plaintiff did not welcome Defendant's discriminatory conduct or comments.

98.     Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. D'Clute's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile, or abusive.

99.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages and lost benefits.

100.    Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, interest, the value and/or economic impact of lost benefits, and compensatory damages.

101.    Defendant FPL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under Title VII, warranting the imposition of punitive and compensatory damages.

102.    The conduct of Defendant FPL and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

103.    Plaintiff Ms. D'Clute has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant FPL has violated Title VII and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper.

## **COUNT III- RETALIATION IN VIOLATION OF TITLE VII**

104.   Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

105.   Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

106.   Ms. D'Clute opposed FPL's discriminatory treatment by complaining to the Defendant's agents or supervisors about the unlawful harassment and discrimination she was experiencing.

107.   At all times relevant, Ms. D'Clute acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant's employees had occurred.

108.   At all times relevant, the unlawful discrimination by Defendant's employees against Ms. D'Clute in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII, which would not have occurred but for that opposition.

109.   At all material times, the employees exhibiting discriminatory and harassing conduct against Ms. D'Clute possessed the authority to affect the terms, conditions, and privileges of Ms. D'Clute's employment with the Defendant.

110.   The hostility increased dramatically following Ms. D'Clute's opposition to FPL workers and supervisors' conduct and her numerous complaints to the Defendant.

111.   Defendant's agents or supervisors retaliated against Plaintiff after she complained, including, but not limited to:

a.  by permitting Ms. D'Clute to endure escalating discrimination despite her complaints;

b.  by having Ms. D'Clute endure progressive discipline and not having other male employees endure the same;

c.  ignoring Ms. D'Clute's request for support while providing such support for her male colleagues;

d.  screaming at her, being belligerent towards her, being hostile and aggressive towards Ms. D'Clute;

e.  bullying and belittling her, criticizing Ms. D'Clute for no reason;

f.  accusing Ms. D'Clute of wrongdoings when there were none;

g.  making many demeaning and derogatory remarks to or about Ms. D'Clute, often in mixed company, and punishing her for having complained about the abusive bullying and hostile work environment;

h.  undergo progressive discipline;

i.  Demand Ms. D'Clute change the way she dressed, interacted with co-workers and changed her work schedule when other male co-workers were not required (or required to do so to the same extent).

112.    Ms. D'Clute opposed discriminatory and harassing conduct by Defendant and the hostile working environment prohibited by Title VII when she complained to Defendant's agents, supervisors, and Human Resources department about the discrimination, harassment, and hostile work environment as described and set forth above.

113.    Ms. D'Clute's complaints involved Defendant's unlawful, discriminatory, and harassing actions, constituting protected activity under Title VII.

114.    After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Ms. D'Clute and did so because of her complaints.

115.    The adverse employment actions by Defendant, as described and set forth above, were the result of Ms. D'Clute's opposition to the discriminatory and harassing conduct and the imposition of a hostile work environment to which she was subjected to in violation of Title VII.

116.    The discriminatory actions of Defendant against Ms. D'Clute, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

117.    Defendant's retaliation would not have occurred but for Ms. D'Clute's participation in a protected activity.

118.    In subjecting Ms. D'Clute to adverse employment action because of her sex/gender, Defendant intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

119.    As a result of the Defendant's violations of Title VII, Ms. D'Clute has suffered damages, including, but not limited to, lost wages, mental pain and suffering, humiliation, emotional distress, diminishment of career opportunities, harm to business reputation, loss of self-esteem, disruption to her family life, and other harm, pain and suffering, both tangible and intangible.

120.    The conduct of Defendant and/or its agents deprived Ms. D'Clute of her statutory rights guaranteed under federal law.

121.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

122.    Plaintiff Ms. D'Clute has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant FPL has violated Title VII and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper.

## COUNT IV- SEX/GENDER DISCRIMINATION (DISPARATE TREATMENT) IN VIOLATION OF FCRA

123.     Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

124.     FPL engaged in unlawful employment practices prohibited by the FCRA by discriminating against Ms. D'Clute because of her sex/gender.

125.     Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, discriminated against Ms. D'Clute because of her sex/gender by subjecting her to progressive discipline, attempting to terminate her employment,

requiring she dressed differently, requiring Ms. D'Clute to act differently with co-workers, forcing Ms. D'Clute to take her personal time off and vacation days, or requiring Ms. D'Clute change her work schedule all while not requiring the same from other male employees.

126.   Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, treated Ms. D'Clute differently than other similarly-situated employees because of her sex/gender, including, but not limited to, the following male comparators:

a.   Clint Ellingsworth,

b.   Cam Gibson,

c.   Bill Blakely,

d.   Mike Napier,

e.   Nate Dinger,

f.   Larry Love,

g.   John New,

h.   JR Fowler,

i.   Brian Sexton,

j.   Zacharia DiDonato,

k.   Ryan Winsky,

l.   Matt Littlejohn,

m.   Kevin Nowack, and

n.   Steve Payne

("Male Comparators")  none of which were subjected to progressive discipline, termination of employment, requirements to dress differently, requirements to act differently with co-workers,

forced to take personal time off or vacation days, or required to change work schedules in response to reporting unlawful behavior.

127.    None of the Male Comparators were harassed and made victims of a hostile work environment, none of whom were screamed at, responded to with hostility, and incorrectly accused of wrongdoing.

128.    Defendant FPL's disparate treatment was because of Ms. D' Clute's sex/gender.

129.    Defendant FPL treated Ms. D'Clute less favorably than similarly situated employees outside her protected class.

130.    In subjecting Ms. D'Clute to adverse employment action on the basis of her sex/gender, Defendant FPL intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

131.    Defendant FPL violated the FCRA by unlawfully discriminating against Ms. D'Clute based on her sex/gender, of which Defendant FPL was fully aware.

132.    As a result of Defendant FPL's violation of FCRA, Ms. D'Clute has suffered damages, including, but not limited to, lost wages, mental pain and suffering, humiliation, emotional distress, diminishment of career opportunities, harm to business reputation, loss of self-esteem, disruption to her family life, and other harm, pain and suffering, both tangible and intangible.

133.    Defendant FPL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. D'Clute's rights under the FCRA. Accordingly, Ms. D'Clute requests punitive damages as authorized by the FCRA.

134.    The conduct of Defendant FPL and/or its agents deprived Ms. D'Clute of her statutory rights guaranteed under the FCRA.

135.    Ms. D'Clute further requests that her attorney's fees and costs be awarded as permitted by law.

136.    Ms. D'Clute has been damaged by FPL's illegal conduct.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

f.   Adjudge and decree that Defendant FPL has violated the FCRA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

g.   Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

h.   Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

i.   Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

j.   Grant Plaintiff such additional relief as the Court deems just and proper.

## <u>COUNT V- SEX/GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF THE FCRA</u>

137.    Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

138.    Here, FPL's conduct occurred because of Ms. D'Clute's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a

reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

139.    Defendant, by and through the conduct of its agents, the FPL supervisors, the HR department, and Green, Kick, and Gottfried, discriminated against Ms. D'Clute because of her sex/gender by subjecting her to progressive discipline, attempting to terminate her employment, requiring she dressed differently, requiring Ms. D'Clute to act differently with co-workers, forcing Ms. D'Clute to take her personal time off and vacation days, or requiring Ms. D'Clute change her work schedule all while not requiring the same from other male employees.

140.    The harassing and mistreatment of Ms. D'Clute by Green, Kick, Gottfried, and FPL supervisors that made hers a hostile work environment included, but was not limited to, ignoring Ms. D'Clute's request for support while providing such support for her male colleagues, screaming at her, being belligerent towards her, being hostile and aggressive towards Ms. D'Clute, bullying and belittling her, criticizing Ms. D'Clute for no reason, accusing Ms. D'Clute of wrongdoings when there were none, making many demeaning and derogatory remarks to or about Ms. D'Clute, often in mixed company, including, but not limited to, the following:

a.   "You smell bad."

b.   "Stop showering with vinegar"

c.   "You're nothing but a crying, sniveling snowflake. No one in the department likes you."

d.   "You are a crazy nut."

e.   "The only reason you still have a job is because of your relations with the supervisors."

f. "We are so glad Clint got you to get a boob job! Now, if he can only get you to shower using real soap! You stink!!"

g. "[Ms. D'Clute] makes this annoying sound with her lips when she laughs. She sprayed me and another co-worker with spit."

141.     The harassing and mistreatment of Ms. D'Clute continued when FPL punished Ms. D' Clute for having complained about the abusive bullying and hostile work environment and after Ms. D'Clute complained and expressed her concerns, FPL made Ms. D'Clute undergo progressive discipline, change the way she dressed, change the way she interacted with co-workers, change her work schedule when other male co-workers were not so required (or required to do so to the same extent) after she complained of sex and religious discrimination.

142.     The harassing actions of FPL against Ms. D'Clute, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.

143.     In subjecting Ms. D'Clute to adverse employment action on the basis of her sex/gender, Defendant FPL intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

144.     The harassing conduct was directly connected to Ms. D'Clute's sex/gender.

145.     FPL's leadership and supervisors, namely Dennis Hampton and JR Fowler, made numerous comments and conduct related to Ms. D'Clute's sex/gender.

146.     When Ms. D'Clute voiced her objections to this harassing and discriminatory treatment, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments and conduct.

147.     Plaintiff did not welcome Defendant's discriminatory conduct or comments.

148.    Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. D'Clute's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile, or abusive.

149.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages and lost benefits.

150.    Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, interest, the value and/or economic impact of lost benefits, and compensatory damages.

151.    Defendant FPL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive and compensatory damages.

152.    The conduct of Defendant FPL and/or its agents deprived Plaintiff of her statutory rights guaranteed under the FCRA.

153.    Plaintiff Ms. D'Clute has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant FPL has violated the FCRA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper.

## COUNT VI- RETALIATION IN VIOLATION OF THE FCRA

154.   Ms. D'Clute realleges and incorporates by reference each allegation contained in paragraphs 1-71 of this lawsuit and alleges further as follows:

155.   Ms. D'Clute opposed FPL's discriminatory treatment by complaining to the Defendant's agents or supervisors about the unlawful harassment and discrimination she was experiencing.

156.   At all times relevant, Ms. D'Clute acted in good faith and with the objective and subjective belief that violations of the FCRA by Defendant's employees had occurred.

157.   At all times relevant, the unlawful discrimination by Defendant's employees against Ms. D'Clute in the terms and conditions of her employment because she opposed a practice made unlawful by the FCRA, which would not have occurred but for that opposition.

158.    At all material times, the employees exhibiting discriminatory and harassing conduct against Ms. D'Clute possessed the authority to affect the terms, conditions, and privileges of Ms. D'Clute's employment with the Defendant.

159.    The hostility increased dramatically following Ms. D'Clute's opposition to FPL workers and supervisors' conduct and her numerous complaints to the Defendant.

160.    Defendant's agents or supervisors retaliated against Plaintiff after she complained, including, but not limited to:

    a.    by permitting Ms. D'Clute to endure escalating discrimination despite her complaints;

    b.    by having Ms. D'Clute endure progressive discipline and not having other male employees endure the same;

    c.    ignoring Ms. D'Clute's request for support while providing such support for her male colleagues;

    d.    screaming at her, being belligerent towards her, being hostile and aggressive towards Ms. D'Clute;

    e.    bullying and belittling her, criticizing Ms. D'Clute for no reason;

    f.    accusing Ms. D'Clute of wrongdoings when there were none;

    g.    making many demeaning and derogatory remarks to or about Ms. D'Clute, often in mixed company, and punishing her for having complained about the abusive bullying and hostile work environment;

    h.    undergo progressive discipline;

i.   Demand Ms. D'Clute change the way she dressed, interacted with co-workers and changed her work schedule when other male co-workers were not required (or required to do so to the same extent).

161.   Ms. D'Clute opposed discriminatory and harassing conduct by Defendant and the hostile working environment prohibited by the FCRA when she complained to Defendant's agents, supervisors, and Human Resources department about the discrimination, harassment, and hostile work environment as described and set forth above.

162.   Ms. D'Clute's complaints involved Defendant's unlawful, discriminatory, and harassing actions, constituting protected activity under the FCRA.

163.   After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Ms. D'Clute and did so because of her complaints.

164.   The adverse employment actions by Defendant, as described and set forth above, were the result of Ms. D'Clute's opposition to the discriminatory and harassing conduct and the imposition of a hostile work environment to which she was subjected to in violation of the FCRA.

165.   Defendant's discriminatory actions against Ms. D'Clute, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.

166.   Defendant's retaliation would not have occurred but for Ms. D'Clute's participation in a protected activity.

167.   In subjecting Ms. D'Clute to adverse employment action because of her sex/gender, Defendant intentionally discriminated against Ms. D'Clute with respect to the compensation, terms, conditions, or privileges of her employment.

168.   As a result of the Defendant's violations of the FCRA, Ms. D'Clute has suffered damages, including, but not limited to, lost wages, mental pain and suffering, humiliation,

emotional distress, diminishment of career opportunities, harm to business reputation, loss of self-esteem, disruption to her family life, and other harm, pain and suffering, both tangible and intangible.

169.    The conduct of Defendant and/or its agents deprived Ms. D'Clute of her statutory rights guaranteed under Florida law.

170.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

171.    Plaintiff Ms. D'Clute has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff, Ms. D'Clute, respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant FPL has violated the FCRA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.    Enter a judgment that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.    Award Plaintiff the costs of this action, together with reasonable attorney's fees and disbursements of action;

e.    Grant Plaintiff such additional relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff DEENA D'CLUTE demands a trial by jury on all issues and all counts of this

Complaint so triable as a matter of right.

Dated: May 1, 2024.

Respectfully Submitted,

By:  /s/ *Andres F. Vidales*
Andres F. Vidales, Esq.
Florida Bar No.: 1041185
*Attorney for Plaintiff*
8333 N.W. 53 Street
Suite 450
Doral, Florida 33166
Tel: (305) 537-6582
Fax: (786) 551-4166
afv@andresvidales.com
legalassistant@andresvidales.com